UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WAYNE HILL,

    Plaintiff,

v.                                                                                   Case No. 22-cv-203-pp

IAN HEALY, *et al.*,

    Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 9), DENYING PLAINTIFF'S EMERGENCY MOTION FOR IMMEDIATE TRANSFER (DKT. NO. 11) AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

      Plaintiff Wayne Hill, who is confined at Oxford Federal Correctional Institution and is representing himself, filed a civil rights complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that the defendants violated his Eighth Amendment rights. Dkt. No. 1. On May 5, 2022, Magistrate Judge Stephen C. Dries screened the complaint and concluded that it failed to state a claim upon which relief may be granted because it did not specify what the individual defendants did or did not do to violate the plaintiff's constitutional rights. Dkt. No. 7. Judge Dries gave the plaintiff the opportunity to amend his complaint, and on June 10, 2022, the court received from the plaintiff an amended complaint. Dkt. No. 10. A month later, on July 11, 2022, the court received from the plaintiff an

1

emergency motion for immediate transfer out of Oxford. Dkt. No. 11. This order screens the plaintiff's amended complaint and resolves his motion.

This case previously was assigned to Judge Dries. Because the court has not yet ordered the complaint to be served on the defendants, they don't know that the plaintiff has sued them and they haven't had a chance to decide whether to consent to Judge Dries's authority to decide the case. The clerk's office reassigned the case to this district judge to consider whether to dismiss the case.

**I.    Screening the Amended Complaint**

  A. <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

      B.      The Allegations in the Amended Complaint (Dkt. No. 9)

The amended complaint names forty-one defendants who worked for the Bureau of Prisons at FCI Oxford. Dkt. No. 9 at 1-2. It says that the plaintiff has been incarcerated since December 4, 2021 and that he arrived at FCI Oxford in March of 2018. Id. at 4.

           1.     *General Allegations*

The amended complaint asserts that the mission of FCI Oxford is to confine offenders in a safe and humane environment, and the plaintiff alleges that he and other persons incarcerated there are "far from being free from worry over the significant dangers of the pandemic. Id. at 3. He asserts that COVID-19 "protocols and procedures were failed by every department head within the structure walls of Oxford FCI, therefore allowing COVID-19, this

3

deadly disease that took over 200 federal inmates lives and gave 90,000 federal inmates COVID-19 . . . ." Id. at 3-4. He says that all the staff were required to follow the COVID-19 procedures outlined by the BOP and the CDC. Id. at 4. The plaintiff alleges that the staff at FCI Oxford don't follow either set of procedures. Id. at 5.

The amended complaint asserts that while defendants Warden Marske, AW King, AW Healy, Richetta Worlds, Warden Keyes, AW Lee and AW O'Donnell may not "have been directly the cause of spread and endangerment of COVID-19 among inmates," they were almost never present at the facility. Id. at 5. The plaintiff claims that this lack of presence, along with the fact that they were "ignoring the continual rise in cases among inmates and staff and not making the necessary changes and reprimanding those who openly violated CDC guidelines [and] procedures," "played a part" in the plaintiff contracting COVID-19 and putting him in danger. Id. at 5. He asserts that the staff at FCI Oxford continues to endanger his life. Id.

Likely in response to Judge Dries's instructions in the original screening order, telling the plaintiff identify the defendants he wanted to sue and to describe the violations they committed, the plaintiff says,

> Finally, who violated Plaintiff rights? What each defendant did, when they did it? Where it happened? Why they did it? Each named defendant has violated Plaintiffs rights, and endangered Plaintiff by not wearing their mask. (Exhibit G)[1] As not all staff are

---
[1] The plaintiff attached as Exhibit G a document titled "FCI Oxford Bulleti, Mask Guidance." Dkt. No. 9-1 at 37. The document is not dated and does not state to whom it is directed (although its references to "when you are outside

4

vaccinated, therefore, those staff members who are not vaccinated are a danger to the Plaintiff. Definition of Danger: exposure or liability to injury, harm, something that may cause harm or injury. Not wearing a mask violating (Exhibit G) Dates and times to check subpoena footage Oxford FCI.

Id. at 6. He goes on to say,

> What each defendant is (unanimously guilty) of is not wearing there mask as ordered by a directive by the Warden Matthew Marske and Warden Keyes (Everyday). While performing there daily duties. Footnote, mask wearing is for my protection from staff who come form all counties with COVID-19 infections. These named staff members get mandated, work overtime, do stand up counts, without wearing mask.

Id. at 7. He concludes, "Why they did it? Not taking the code of ethics serious, negligence, not taking these responsibilities serious, not caring about the well being of Plaintiff." Id.

### 2. *2020 Allegations*

The plaintiff alleges that between August and October 2020, John and Jane Doe correctional officer defendants were "moving freely" without wearing personal protective equipment while also working at other housing units housing individuals who'd tested positive for COVID-19. Id. at 4. The plaintiff was in Juneau housing unit and had not tested positive for the virus. Id. The plaintiff asserts that John and Jane Doe were working double shifts in COVID-

---

your cell" indicate that it is directed to incarcerated persons). It indicates that wearing an institution-issued face covering is mandatory anytime "you are outside of your cell AND when social distancing of six (6) feet is not possible." Id. It says that surgical masks are mandatory for quarantine and isolation areas and that face coverings are mandatory "at all times while at outside recreation and/or anytime you are outside your cell." Id. The document also contains social distancing reminders. Id.

positive units, then coming over to Juneau unit and "doing stand-up counts" three times a day and answering disturbance/disruption calls—all without wearing masks or personal protective equipment. Id. The plaintiff alleges that John and Jane Doe were assigned to work in Juneau unit but weren't being required to go home and change clothes, take showers, change footwear, etc. Id. The plaintiff makes the same allegations against defendants CO Dauman, CO Hopkins, CO Jump, Case Manager Harper, CO Ellsworth, CO Beaver, CO Drinkwater, CO Bluout, CO Ingels, and CO Davis (female). Id. The plaintiff asserts that on October 15, 2020, he was diagnosed with COVID-19. Id.

   3. *2021 Allegations*

The plaintiff alleges that from January 1, 2021 through February 27, 2022, FCI Oxford "was in level 3 (Red)." Id. at 5, 6. (The court assumes that the plaintiff is referring to the CDC's "Community Levels," a tool rolled out by the CDC in March 2022 to help communities decide what which prevention precautions to take. https://www.cdc.gov/coronavirus/2019-ncov/your-health/covid-by-county.html. There are three Community Levels—Low (green), Medium (yellow) and High (red). When the Community Level is High, the CDC recommends that individuals wear masks indoors in public, stay up to date with COVID-19 vaccinees, get tested if they have symptoms and observe extra precautions if they are at high risk for severe illness. Id.) The plaintiff alleges that during that time, "Oxford FCI staff and individual departments; education, recreation, dining hall, were violating Plaintiff safety and well being." Id. at 5.

6

He asserts that there were COVID-19 positive staff at FCI Oxford in December 2021 "with John Doe 3 and Jane Doe 4," that that FCI Oxford "continue to move recklessly." Id. The plaintiff alleged that between January 2021 and February 2022, while FCI Oxford was "under level 3 red," Recreation Administrator Armstrong, C/O Wentland, C/O Schultz and C/O Vue "violated guidelines" by allowing group activities and sports, putting the plaintiff at "high risk of infection and enhance the spread of the virus." Id. at 6. He provided examples of the contact sports allowed—basketball, handball and weight-lifting. Id.

The plaintiff also alleged that between December 16, 2020 and October 16, 2021, the education staff—instructor Budnik—was allowing persons incarcerated on the east side and persons incarcerated on the west side to mingle in the education/library area, "violating policy." Id. He said that video footage would show that "staff do not use good judgement by not utilizing their masks on numerous occasions and directly putting inmates at risk." Id.

       4.    *2022 Allegations*

The plaintiff alleges that the March 2022 visiting schedule at FCI Oxford shows that the Marquette and Sauk units were recklessly allowed to mix, causing cross-contamination—he states that Exhibit B (the Movement Schedule, dkt. no. 9-1 at 5) clearly states that East and West must be separated while in level 3 (red). Id.

7

The plaintiff alleges that between April 26 and April 28, 2022, "staff were preparing for accreditation;" he says that everyone was wearing masks, but that immediately after accreditation, "no mask were worn by staff." Id. at 7. He asserts that this was "fraudulently misleading, pure negligence, and deception." Id.

The plaintiff asserts that on May 17, 2022, league sports (weightlifting) were taking place. Id. at 6. He also alleges that on this date, Lt. Denton, Lt. Reed and Lt. Jordan were near the dining hall between 5:20 and 5:45 p.m. but were not wearing masks or socially distancing. Id.

The plaintiff alleges that on May 20, 2022, Lt. Sadowski and Lt. Church were near the dining hall between 11:00 and 11:30 a.m. but were not wearing masks or socially distancing. Id. at 7. He also asserts that around 5:00 p.m. on that date, Lt. Smith, C/O Davis, C/O Borud and Lt. Jordan were standing in front of the dining hall without wearing masks or socially distancing, and he says that C/O Kreier and C/O Perrigo did the same between 8:00 a.m. and 3:00 p.m. in the Waupaca unit. Id. at 7.

The plaintiff alleges that on May 28 and 29, John Doe "compound staff" were "mixing both EAST/WEST in dining hall without sanitizing kitchen/tables in between units." Id. at 5. He asserts that there were procedures in place for sanitizing the dining hall and that John Doe in food service did not follow those procedures. Id. at 6. He says there were no sneeze guards in place and milk was pre-poured and set out for inmates. Id.

The plaintiff does not provide a date, but says that unite manager Reynolds and case manager Klawitter were not wearing masks and endangered his safety. Id. at 7.

  5.  *Relief Requested*

The plaintiff seeks $50,000 for pain and suffering, punitive damages and a transfer to FMC Rochester in Minnesota. Id. at 8. (He notes that he has been denied a transfer because "COVID-19 infections shut down low custody transfers." Id.) The plaintiff also asks that staff be required to wear masks daily "following B.O.P. action plan." Id.

C. Analysis

Because the plaintiff is suing officers at a federal correctional institution, Bivens, rather than 42 U.S.C. §1983, is the mechanism for his claims. Remedies under Bivens are limited, and the United States Supreme Court has recognized claims for only three circumstances: (1) a Fourth Amendment claim involving an unlawful search and seizure, as recognized by the Bivens decision itself; (2) a Fifth Amendment due process claim involving gender discrimination, as recognized by Davis v. Passman, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim for inadequate medical treatment as recognized by Carlson v. Green, 446 U.S. 14 (1980). The Supreme Court has advised lower courts not to expand the types of remedies available under Bivens unless "special factors" warrant it, because expansion of Bivens is a

9

"disfavored judicial activity". See Ziglar v. Abbasi, 137 S. Ct. 1843, 1854-55 (2017); Egbert v. Boule, 142 S. Ct. 1793 (2022).

A court must make a two-step inquiry when faced with a potential Bivens claim. Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020). First, the court must ask whether the case presents a new Bivens context, meaning the court must analyze whether the circumstances are different from the three acceptable types of Bivens claims. Ziglar, 137 U.S. at 1859-60. Second, if the claim is a new context, the court must consider whether any "special factors" show that the court is less able than Congress to "weigh the costs and benefits of allowing a damages action to proceed." Id. These factors include

> [t]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; [and] the presence of potential special factors that previous *Bivens* cases did not consider.

Ziglar, 137 S. Ct. at 1859-60.

The plaintiff's claims arise under the Eighth Amendment. Though the plaintiff alleges that he contracted COVID-19 from the defendants' actions, he does not appear to be alleging denial of medical care. He has not alleged that his 2020 COVID-19 infection was left untreated and that his condition worsened as a result. He has not alleged any injury that he suffered as a result of being infected with COVID-19. Rather, his allegations focus on the

10

defendants' failure to follow established protocols and procedures, allegedly exposing him to potentially dangerous living conditions. This appears to be an Eighth Amendment conditions-of-confinement claim. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). This is not one of the three recognized Bivens claims.

That means the court must consider whether "special factors that counsel hesitation about granting the extension" of Bivens exist. Hernandez, 140 S. Ct. at 743. There are several such special factors. As to the rank of the officers involved, the plaintiff has sued employees of the BOP at various ranks, from front-line corrections officers all the way up to the warden. He is not alleging that there is a particular rank of officer responsible for creating the injuries he alleges. As the court will discuss below, the constitutional right at issue appears to be an Eighth Amendment right to humane conditions of confinement—exactly the kind of claim for which the Supreme Court declined to find an implied Bivens case of action in Ziglar. The official action the plaintiff alleges is general—that all the defendants violated various policies by not wearing masks and thus exposing him to the virus. He has not made specific, targeted allegations that a particular official of a particular rank made a deliberate decision to put him in danger. The plaintiff points to no judicial guidance as to how the defendant officers were to respond to the situation, nor does he point to any legal or statutory mandate under which the defendants were operating. The plaintiff's suit raises a significant risk of disruptive intervention into the functioning of the Bureau of Prisons, which is part of the

11

executive branch. All these factors counsel against this lower court expanding the reach of Bivens to include a conditions-of-confinement claim based on alleged failures to take precautions to protect incarcerated persons from COVID-19.

The plaintiff describes a laundry list of instances covering a two-year period where the defendants did not follow the COVID-19 policies and guidelines promulgated by FCI Oxford, the BOP and the CDC. Even if Bivens did recognize a conditions-of-confinement claim of the type the plaintiff has raised, the allegations in the amended complaint would not state a claim upon which this court could grant relief.

First, many of the allegations occurred in 2021 and 2022, *after* the plaintiff was diagnosed with COVID-19. Arguably, alleged violations that occurred after October 2020, when the plaintiff was diagnosed with COVID-19, are not yet ripe, because the plaintiff has not alleged that he was physically injured or harmed by those violations. The plaintiff alleges that the defendants' actions put him in danger, but this is insufficient to state a claim because a plaintiff must allege that he suffered a real injury, not a hypothetical one. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The plaintiff also alleges that his "mental and physical health at that time was overwhelming and stressful to know Plaintiff was within the age bracket of high risk was unbearable." Dkt. No. 9 at 8. The plaintiff may be alleging that the injury he suffered after October 2020 was emotional and mental. But "[p]risoners

12

bringing federal lawsuits . . . ordinarily may not seek damages for mental or emotional injury unconnected with physical injury." Minneci v. Pollard, 565 U.S. 118, 129 (2012). See also, 42 U.S.C. §1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . .").

Second, most of the plaintiff's allegations complain that the defendants violated policies and protocols. Section 1983 "protects plaintiffs from constitutional violations, not violations of . . . departmental regulations and police practices." Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003). Similarly, Bivens recognized "an implied cause of action to remedy a *constitutional* violation." Ziglar, 137 S. Ct. at 1855. "[A] *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" Id. at 1860 (quoting Correctional Services Corp. v. Malesko, 534 U.S. 61, 74 (2001)).

Third, "when alternative methods of relief are available, a Bivens remedy usually is not." Ziglar, 137 S. Ct. at 1863. Because the plaintiff's allegations principally concern alleged policy violations, the appropriate venue to address these violations is the Bureau of Prisons' grievance process.

This lower court has no basis for expanding Bivens to cover the circumstances of the plaintiff's claims. The plaintiff has not alleged a federally-redressable injury for the alleged violations and has not articulated his claims as constitutional violations. The court will dismiss the plaintiff's case.

13

## II. Motion for Emergency Transfer (Dkt. No. 11)

In mid-July, the plaintiff filed an emergency motion for immediate transfer, alleging that he had been harassed and retaliated against by Oxford staff for filing his "<u>Bivens</u> action." Dkt. No. 11 at 1. Because the court has determined that the amended complaint does not state a claim upon which relief may be granted, the court will deny the motion as moot. Even if the amended complaint had stated a claim, the court still would deny the motion, because ordering transfers is beyond the scope of the court's authority. <u>See</u> <u>Westefer v. Neal</u>, 682 F.3d 679, 683 ("[T]he PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prisoner conditions: '[P]rison officials have broad administrative and discretionary authority over the institutions they manage.'") (quoting <u>Hewitt v. Helms</u>, 459 U.S. 460, 467 (1983)).

## III. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion for emergency transfer. Dkt. No. 11

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

14

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within sixty days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the sixty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 9th day of August, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**